IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No: 1:11-CV-03075-RBP |
| RICHARD F. BLISS, JR.; ) RICHARD F. BLISS, III, ) ) | |
| Defendants, ) ) | |
| SCOTT RAY BROWN ) ) | |
| Intervenor. | |

**MEMORANDUM OPINION**

This cause comes before the court on the plaintiff's Motion for Summary Judgment filed on March 14, 2013. The defendants responded to the motion on April 15, 2013, and the plaintiff replied to the defendants' response on April 24, 2013. The defendants followed with a surreply brief on May 7, 2013. The parties participated in a recorded telephone conference discussing the motion on May 15, 2013.

**Facts**[1]

On December 22, 2010, Scott Brown and Jason Roberts were on the Coosa Valley Electric Cooperative power line easement near Whiting Road in Talladega County, Alabama. Zarapharah Bills accompanied Brown and Roberts and was waiting in their running car. Brown

---

[1] The court considers the facts in the light most favorable to the non-movant. *Hardy v. Regions Mortg., Inc.*, 449 F. 3d 1357, 1359 (11th Cir. 2006).

1

and his companions admitted to attempting to steal copper from the power poles. The easement is on or near property owned by defendant Richard Bliss, Jr. The defendants, seeing strangers on the easement and suspecting criminal activity, retrieved firearms from their house. Bliss Jr. instructed his son to remain in their truck and park behind the intruders' car to prevent escape. Bliss Jr. confronted Brown and Roberts, asking them to explain their presence on the easement. Brown and Roberts began running toward the car. Bliss Jr. asked them to stop running and fired a single shot into the air. Brown stopped, but Roberts kept running. Bliss Jr. called 911 and requested police at the scene.

After calling the police, Bliss Jr. ordered Brown to slowly walk to the car. Bliss III had exited his truck upon hearing the gunshot from his father's direction. Bliss III had allowed Roberts to pass by him unharmed. When Brown and Bliss Jr. arrived at the vehicles, Bills yelled at Brown and Roberts to get in the car, saying "he's not going to shoot us, we'll run over him." Brown and Roberts got in the car. Bliss Jr. told them that he had called the police. Bills put the car into reverse at a high rate of speed. Bliss III was standing behind the car, directly in its path. Both Bliss Jr. and Bliss III, fearing Bliss III was going to be hit by the reversing car, began to fire their weapons at the car's tires in an attempt to disable the car. Bliss III was forced to jump out of the path of the car. One of the bullets penetrated the body of the car and struck Brown, causing injury to his spine and resulting in paraplegia.

Both defendants were arrested on December 30, 2010, and charged with discharging a gun into an occupied vehicle. Ala. Code § 13A-11-61(B). Bliss Jr. was also charged with first degree assault. Ala. Code § 13A-6-20. Bliss Jr., claiming self-defense, (acting in protection of his son), was acquitted of all charges in his criminal trial. Bliss III was granted youthful offender

status.

Scott Brown filed a civil suit in this district court against the defendants on June 7, 2011, alleging negligence/wantonness and outrage.[2] Bliss Jr. contacted Nationwide on or about June 30, 2011 and gave notification of the shooting incident and subsequent civil suit.  The Homeowner's Policy provisions include:

> LIABILITY EXCLUSIONS
>
> 1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:
>
>> a) caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct. . . .
>>
>> b) caused by or resulting from an act or omission which is criminal in nature and committed by an insured.
>>
>> This exclusion 1.b) applies regardless of whether the insured is actually charged with, or convicted of a crime.
>
> LIABILITY CONDITIONS
> . . .
> 3. Duties after Loss. In case of a loss, you must perform the following duties. You must cooperate with us in seeing that these duties are performed.
>
>> a) give notice to us or our agent as soon as practicable setting forth:
>>> (1) identity of the policy and insured.
>>> (2) time, place, and facts of the accident or occurrence.
>>> (3) names and addresses of the claimants and witnesses.
>>
>> b) immediately forward to us every document relating to the accident or occurrence.
>> . . .

Nationwide filed the instant action on August 22, 2011, seeking declaratory judgment

---

[2] Scott Brown has intervened into this case.

regarding its duties to defend and indemnify the defendants under the Homeowner's Policy.

## Summary Judgment Legal Standard

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). "On summary judgment, "[i]f there is conflict between the plaintiff's and the defendant's allegations or in the evidence, the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor." *Shotz v. City of Plantation, Fla.*, 344 F. 3d 1161, 1164 (11th Cir. 2003) (quoting *Molina v. Merritt & Furman Ins. Agency*, 207 F. 3d 1351,

4

1356 (11th Cir. 2000)). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## Analysis

The plaintiff argues that coverage under the instant policy is precluded for the defendants because of policy exclusions and untimely notice. Its general arguments are that:

(1) The policy excluded the defendants' coverage because they intentionally caused Brown's injuries. (Liability Exclusions 1.a).

(2) The policy excluded the defendants' coverage because they committed acts which were criminal in nature that caused Brown's injuries. (Liability Exclusions 1.b). Nationwide further argues that exclusion 1.b) applies even if an insured was not charged with or convicted of a crime. See sentence following 1.b).

(3) The policy excluded the defendants' coverage because they did not give notice "in case of a loss" as soon as practicable. (Liability Condition 3. Duties after Loss).

### A. Criminal Acts Exclusion

The defendants argue that summary judgment procedure requires the movant to support its motion with credible evidence and show that no reasonable jury could find for the non-moving party. *Acceptance Ins. v. Brown*, 832 So.2d 1, 12 (Ala. 2001). They argue that

Nationwide has not met its burden to establish that no reasonable jury could find for the defendants. The defendants offer the father's acquittal under self-defense laws and the substantial evidence presented to the criminal case jury regarding the father's defense of the son during the shooting.[3] Both father and son testified in the criminal case that they were attempting to shoot the tires on the car to stop the vehicle and had no intention of shooting or injuring any of the car's occupants. Even if deadly force was intended, however, the defendants cite the father's testimony regarding the driver of the car reversing at a high rate of speed directly toward his son, thus invoking a "defense of others" justification.

    This court does not conclude that a person who acted in self-defense or the defense of another, and who was presumed to be innocent until found guilty in a court of law, has committed a criminal act. While the plaintiff has offered cases supporting the policy considerations upholding criminal act exclusions, including *Hooper v. Allstate Insurance Co.*, 571 So. 2d 1001, 1003 (Ala. 1990) and *Alfa Specialty Ins. Co. v. Jennings*, 906 So. 2d 195 (Ala. Civ. App. 2005), these cases are distinguishable in that the insureds all pled or were found guilty of criminal acts. There were also no self defense claims.

    The plaintiff substantially relies on the case of *New Hampshire Ins. Co. v. Blue Water Off Shore, LLC*, 2009 WL 1509458 (S.D. Ala. 2009) to support its "criminal act exclusion" argument.[4] This court is also impressed with Judge Steele's opinion, but for different reasons.

---

[3] The court notes that the son's youthful offender adjudication does not stand as a conviction under Alabama law. *See* Ala. Code § 15-9-7A (1975). Youthful offender status is given to persons under 21 to insulate them from the harshness of a criminal trial and provide an informal and confidential process. *See Raines v. State*, 317 So. 2d 559, 561 (1975). This court, consistent with applicable state law, will not interpret a youthful offender adjudication as any sort of admission or finding of guilt or liability.

[4] Apparently, there was no appeal.

The plaintiff emphasizes the following clause in its policy under "Liability Exclusion:" "This exclusion 1.b) applies regardless of whether the insured is actually charged with or convicted of a crime." It should be noted that the application and significance of this clause, if applicable, depends upon the wording of 1.b), which includes: "caused by or resulting from an *act* or omission which is *criminal* in nature and c*ommitted* by an insured." (Emphasis added). Note that there must be an act which is *criminal* in nature. The policy does not say that a non-crime becomes a crime whether there is a conviction or not. Judge Steele did an excellent job of discussing the terms "crime" and "criminal." His statements include:

> The word "criminal" is commonly defined as "relating to, involving, or being a crime." Merriam Webster's Collegiate Dictionary 274 (10th ed.1993). "Crime," in turn, is defined as "an act or the commission of an act that is forbidden or the omission of a duty that is commanded by a public law and that *makes the offender liable to punishment* by that law." Id.; see also Littlefield v. Acadia Insurance Co., 392 F.3d 1, 8 (1st Cir.2004) (using a similar dictionary definition to construe the term "criminal" in a policy exclusion). . . .
>
> Nor does anything in the common definition of "crime" or "criminal" suggest that a crime is not a crime, or a criminal act not a criminal act, until and unless there has been a conviction. On the contrary, as noted above a crime is a forbidden act, which act *makes the offender liable to punishment*. Likewise, the definition employed in Littlefield defines "crime" as "an act committed ... in violation of law ... and *for which punishment is imposed upon conviction*." 392 F.3d at 8 (internal quotes omitted). . . .
>
> FN2 . . .  ("[A] reasonable policy holder would understand the phrase 'criminal acts' to refer to conduct for which a person could be convicted *and punished*."); . . .

*Id*. at *3 (Emphasis added).

Essential elements of an act which is considered to be a "crime" or "criminal" are that the act be "forbidden" *and* that it be one for which the actor is liable for "punishment." The instant case presents a question involving whether acting in self-defense is criminal in nature, This court does not so hold. Under Alabama law, a person cannot be "convicted and punished" when he

acted in self-defense or in the defense of others. This court does not now decide, as a matter of law, whether either defendant acted in self defense. On the other hand, this court clearly cannot determine, as a matter of law, that they did not so act. An issue which has not been clearly addressed is whether the fact that the father has been acquitted and that the son has not been convicted will be admissible.

### B. Intentional Acts Exclusion

The plaintiff also relies upon exclusion clause 1. a) which includes: "caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct. . . ."

The defendants note that no Alabama appellate court has interpreted the exact language at issue but offer cases from other jurisdictions involving Nationwide and interpreting the precise policy language. While the court notes that these cases are not controlling, it finds them instructive. In *Tanner v. Nationwide*, 289 S. W. 3d 828 (Tex. 2009), the Texas Supreme Court concluded that "'intentionally' as used in the exclusion speaks to the resulting damage or injury, not to the actions that led to it. . . . To forfeit coverage, the insured must intend to harm, not merely intend to act." *Id.* at 833-834. *See also Nationwide Mut. v. Irish*, 857 N.E. 2d 169 (Ohio Ct. App. 2006) ("the insurer must demonstrate that the injury itself was intentional or expected"); *Massa v. Nationwide Mut.*, 904 N.Y.S. 2d 531, 533 (App. Div. 2010) ("Coverage may be barred under such an exclusion only if there is no possible legal or factual basis to support a finding that, from the point of view of the insured, the bodily injuries inflicted were unexpected, unintended and unforeseen"). Note that the exclusion clauses here apply to "bodily injury" or "property damage" not just "acts."

The language in 1.a) substantially differs from some of the exclusion clauses discussed in *Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570 (Ala. 1988) in that it includes "of which the insured knows or ought to know." This language is more closely related to that in *Alabama Farm Bureau Mut. Ins. Co. v. Dyer*, 454 So. 2d 921, 922 (Ala. 1984) ("to bodily injury or property damage which is either expected or intended from the standpoint of the insured."). As *Tapscott* notes, the insurer in *Dyer* was required to defend and indemnify, unlike in other cases cited in *Tapscott*. 526 So.2d at 572.  Although the *Dyer* court also gave an additional reason for its decision, *Tapscott* notes that "a subjective approach was required *within the terms of the policy itself*. Id (Emphasis in original).

This court first notes that there is at least an ambiguity and/or an otherwise question of fact as to whether an insured "knew or ought to know" the result which would follow from his action. Beyond that, there is at best, an ambiguity and question of fact as to the appropriate interpretation of the word "intentionally." There are various meanings of the word. Among others, there is "specific" intent, "general" intent, "corrupt" intent, "willful" intent, etc. *Compare Ratzlaf v. U.S.*, 510 U.S. 135 (1994) and *Spies v. U.S.*, 325 U.S. 91 (1945). "Willfull" usually means acting with the intent to violate the law; that is, acting with a bad purpose to disobey or disregard the law. *See Cheek v. U.S.*, 498 U.S. 192 (1991); Eleventh Circuit Pattern Instructions; *Bryan v. U.S.,* 524 U.S. 184 (1998); and *U.S. v. Starks*, 157 F. 3d 833 (11th Cir. 1998). Further, the statement "intentionally" caused acts "including willful acts" is confusing and ambiguous. Are "willful" acts not always intentional? The cited cases suggest an innate ambiguity.

Alabama law requires that "exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured." *Nationwide Mut. Ins. Co. v.*

9

*Thomas*, 103 So. 3d 795, 803 (Ala. 2012). This court reads the policy language of "ought to know will follow" as requiring a subjective analysis. Applying the subjective standard, this court finds a genuine issue of material fact to exist regarding whether the defendants "ought to know that injury could follow."

### *C. Notice*

It is undisputed that the Bliss defendants did not notify Nationwide of the incident until shortly after receiving the civil complaint. The notice provision in the policy refers to "Duties after Loss." The defendants notified the plaintiff 23 days after suit was filed. Nationwide contends that this notification was not timely and violated the policy's requirement to provide notice "as soon as practicable," but it also argues that the time to notify began running on the date of the incident.

Under Alabama law, "notice is not required until some claim within the coverage of the policy has been presented or is reasonably to be anticipated, in which event the requirement as to notice is satisfied if notice is given within a reasonable time after the situation assumes an aspect suggestive of a possible claim for damages." *Pan Am. v. DeKalb-Cherokee*, 266 So. 2d 763, 771 (Ala. 1972). "The factors to be considered are the length of the delay in giving notice and the reasons therefor.[5] Absence of prejudice to the insurer is not a factor to be considered." *Id*. Without a reasonable excuse or circumstances justifying a delay, a breach of the notice condition occurs as a matter of law. *Id*. However, if a reason is provided, "the question of the reasonableness of a delay in giving notice . . . is a question of fact for the jury." *S. Guar. Ins. v. Thomas*, 334 So. 2d 879, 882-883 (Ala. 1976).

---

[5] Of course, the policy language must also be considered. It says, "after loss."

The defendants cite their affidavit testimony where they state that they never received any type of communication from the victim or his attorney suggesting a civil lawsuit would be filed until the filed complaint was sent to them. The defendants argue that the evidence that they notified Nationwide as soon as they knew of a claim creates disputed facts or conflicting inferences sufficient to make "the question of the reasonableness of a delay in giving notice . . . a question of fact for the jury." *S. Guar. Ins.*, 334 So. 2d at 882-883 (Ala. 1976).

The "Liability Conditions" section of the policy states:

> 3. Duties *after Loss. In case of a loss*, you must perform the following duties. You must cooperate with us in seeing that these duties are performed.
>    a) give notice to us or our agent as soon as practicable setting forth:
>       (1) identity of the policy and insured.
>       (2) time, place, and facts of the accident or occurrence.
>       (3) names and addresses of the claimants and witnesses.
>    b) immediately forward to us every document relating to the accident or occurrence. (Emphasis added).

Significantly, the only "Definitions" section of the policy does not define "loss," intentional," "willful," "crime," or "criminal." There is a reference to "Intentional Acts," but in the "Property Exclusions" section. The "Definitions" section adds that all words which are defined in other sections are in bold print. There are no pertinent bold print definitions under "Liability Exclusions," or the "Duties After Loss" provision.

No definition of "loss" in Merriam Webster's Collegiate Dictionary appears to suggest that the possibility of a *future* detriment, damage, injury, claims, suit, etc. is a "loss;" certainly not a present loss which would necessitate a notice under "Duties after Loss." An insured could reasonably believe that no loss had occurred before he received the law suit document(s). He might well think, "I am at a loss as to what 'loss' means in this clause."

*Reeves v. State Farm Fire and Casualty Company*, 539 So.2d 252 (Ala. 1989) states the difference between the "Duties after Loss" clause in that case and the one in this case. That clause reads, "In case of an accident or occurrence, the insured shall . . . . ." The clause here says, "In case of a loss, you must . . . . ." Interestingly, *Reeves* also notes that even a State Farm insurance agent testified that an article in the newspaper about a shooting did not indicate to him the existence of an "occurrence" within the meaning of the policy. The *Reeves* court distinguished *American Liberty Ins. Co. v. Soules*, 288 Ala. 163, 258 So.2d 872 (1972), noting that the delay of 11 months in filing occurred before any suit papers were filed. *Reeves* also cites *Watts v. Preferred Risk Mut. Co.*, 423 So.2d 171 (Ala. 1982), noting that State Farm never had the opportunity to control the litigation. Nationwide did.[6]

The motion will be denied.

This the 30th day of May, 2013.

_____
**ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE**

---

[6] Without regard to the confusion caused by the meaning, or lack of meaning, of "loss," the "delay" of six months is likely not unreasonable as to either defendant. As to Bliss III, also see the *Reeves* discussion concerning knowledge of the policy.